```
                                                        ┌─────────────────────────────────────┐
                                                        │ USDC SDNY                           │
                                                        │ DOCUMENT                            │
                                                        │ ELECTRONICALLY FILED                │
UNITED STATES DISTRICT COURT                            │ DOC #:_____              │
SOUTHERN DISTRICT OF NEW YORK                           │ DATE FILED:   9/30/2014             │
                                                        └─────────────────────────────────────┘
```

------------------------------------------------------------ X
MICHELLE CEILIA MARECHEAU,                          :
                                    Plaintiff,       :
                                                    :
                -against-                            :        13-CV-2440 (VEC)
                                                    :
EQUAL EMPLOYMENT PRACTICES                          :        OPINION & ORDER
COMMISSION (NYC),                                   :
CHARISE L. HENDRICKS,                               :
JUDITH GARCIA QUINONEZ,                             :
                                    Defendants. :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

 *Pro se* plaintiff Michelle Marecheau brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Plaintiff alleges that she was subjected to discrimination, retaliation, and a hostile work environment on the basis of her perceived disability by her former employer, the Equal Employment Practices Commission ("EEPC"), and the two individually-named defendants: Charise Hendricks, who was the Executive Director of the Manhattan EEPC when Plaintiff was terminated; and Judith Garcia Quinonez, EEPC's Agency Counsel and Director of Compliance.

 On October 18, 2013, Defendants moved to dismiss the Complaint, arguing that the election of remedies provisions of the NYSHRL and NYCHRL preclude this Court from adjudicating those causes of action and that Plaintiff failed to state a claim under the ADA. Dkt. 16; Def. Mem. Law at 2. On November 27, 2013, the Court granted Plaintiff a three-month extension to file her opposition to the motion to dismiss on the condition that no further extensions would be granted. Dkt. 20. When Plaintiff did not file an opposition, the Court

issued an Order to Show Cause why the action should not be dismissed pursuant to Federal Rule

of Civil Procedure 41(b) for failure to prosecute.  Dkt. 21.  When Plaintiff appeared late to the

Show Cause Hearing on June 27, 2014, the Court scheduled a second hearing for July 11, 2014.

Dkt. 22.  At that hearing, Plaintiff was given until July 31, 2014, to file her opposition.  Dkt. 23.

Plaintiff filed her opposition on July 31, 2014.  Dkt. 24.  For the reasons set forth below,

Defendants' motion is GRANTED, and the Complaint is DISMISSED.

## BACKGROUND

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is met when "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*  The Court accepts as true the factual allegations in the

complaint and draws all reasonable inferences in the plaintiff's favor.  *Harris v. Mills*, 572 F.3d

66, 71 (2d Cir. 2009).  In doing so, the Court construes a *pro se* plaintiff's submissions

"liberally" and with "special solicitude," and interprets them "to raise the strongest arguments

that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per*

*curiam*) (quoting *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis from

*Triestman*).  But even *pro se* complaints must state a plausible claim for relief to survive a

motion to dismiss.  *Harris*, 572 F.3d at 72 (citing *Ashcroft*, 556 U.S. at 679).  *Accord Sykes v.*

*Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (affirming dismissal of a *pro se* plaintiff's

1983 claim because "the facts as alleged in the amended complaint [were] not sufficient to state a

claim for relief," even "reading the complaint liberally and drawing all reasonable inferences

therefrom" (citing *Erickson v. Pardus*, 551 U.S. 89, 94-95 (2007)).

In addition to the facts alleged in the complaint, the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which [plaintiff] relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  When resolving a question of the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court may also resolve "disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Plaintiff claims to suffer from trimethylaminuria ("TMAU"), a rare disorder that stems from the liver's inability fully to metabolize a compound (trimethylamine, or "TMA") commonly found in choline-rich foods such as eggs, fish, and meat.  Dkt. 2-2 at 1.  At body temperature, TMA is a gas that has a foul, fishy smell, hence TMAU's more commonly-used label: "fish odor syndrome."  Dkt. 2-1 at 8.  TMAU does not have any physically limiting manifestations.

Plaintiff worked for the EEPC from November 2000 until early 2013.[1]  In 2002, Plaintiff advised her then-supervisor, Abraham May, Jr., of her disorder during an in-person meeting.  Dkt. 2-1 at 8.  In a letter to May dated August 28, 2002, memorializing that meeting, Plaintiff emphasized that her condition was "neither hygienic nor contagious" and that TMAU was "not a physical disability and [would] not affect [her] work in any way."  Dkt. 2-1 at 8. Plaintiff also claimed, however, that she felt uncomfortable at work because of how her coworkers treated her.  Dkt. 2-1 at 8.  Plaintiff attached an information sheet to that letter to explain her disorder.  Dkt. 2-2 at 1.  The information sheet stated, in part, that "the vast majority of patients appear to have

---

[1]     The record does not reflect the date or cause of Plaintiff's separation from the EEPC.

normal mental and physical abilities, lead normal lives and have good hygiene practices.  The
main problem afflicting most patients are psycho-social ones caused by sporadic, unexplained
odor production."  *Id.*  Plaintiff also claims she provided May with the results from a TMAU
screening test.  Pl. Mem. Law Opp. ¶ 3.  Those results stated: "[T]he patient is excreting
intermediate levels of TMA . . . .  A TMA-N-oxide (enzyme) analysis indicated that her enzyme
level is 80.5% which is slightly below the normal range of 86%.  Based on the above data and on
the enzyme analysis, we presumed that the patient could be a carrier of the disorder referred to as
[TMAU].  A gene testing would be necessary for confirmation of the above diagnosis."  Pl.
Mem. Law Opp. Exh. B.

      Plaintiff's present complaint alleges that her coworkers' and superiors' poor treatment of
her, allegedly because of her malodor problem, made for a hostile and often antagonistic work
environment.  Dkt. 2 at 6; Dkt. 2-1 at 3.  Plaintiff alleges that Hendricks, aided by Garcia
Quinonez, unlawfully discriminated against her due to her disability by, *inter alia*, giving her
poor performance evaluations, denying her leave, and twice suspending her without pay and
without following proper procedure in an effort to intimidate and harass her.  Dkt. 2 at 8; Dkt. 2-
1 at 1-3.  The Complaint also raises claims for retaliation and hostile work environment.  Dkt. 2
at 3.

      Plaintiff made an internal discrimination complaint in 2008 but decided not to pursue it.
Dkt. 2-2 at 2.  On March 26, 2012, Plaintiff complained to the Social Service Employee Union
Local 371, alleging that the EEPC was requiring employees to "clock out" during lunch hours in
violation of union policy.  Pl. Mem. Law Opp. Exh. F.  By the same letter, Plaintiff filed a
grievance based on "poor" performance evaluations for the years 2010 and 2011.  *Id.*  Plaintiff
alleged the evaluations were "invalid" because she was not given prior notice of the metrics by
which her performance would be measured.  *Id.*

In April and November 2012, Plaintiff initiated complaints with the New York State Department of Human Rights ("NYSDHR") against the EEPC asserting claims for disability discrimination.  Pl. Mem. Law Opp. Exhs. C, F; Tracy Decl. Exh. A, B.  Plaintiff's April 17, 2012, complaint charged unlawful discrimination, retaliation, and hostile work environment on the basis of her disability.  Pl. Mem. Law Opp. Exh. C.  By opinion dated August 27, 2012, the NYSDHR dismissed Plaintiff's complaint because, *inter alia*, the claimed adverse actions bore "little or no connection to discriminatory motives," and, therefore, were not actionable under the NYSHRL.  Tracy Decl. Exh. A.

On October 16, 2012, Plaintiff and Hendricks had a confrontation in the workplace, which led to Plaintiff being suspended for two-and-one-half weeks without pay.  Dkt. 2 at 8.  The Complaint alleges that Hendricks and Quinonez deliberately misrepresented what had happened in the confrontation and that Hendricks had Plaintiff escorted out of the building to intimidate and embarrass her.  Dkt. 2-1 at 2.  Plaintiff claims this incident and her subsequent suspension were "pretext for discrimination."  Pl. Mem. Law Opp. ¶ 17.  Plaintiff filed a second complaint with NYSDHR on November 29, 2012.  In this complaint, she again charged unlawful discrimination, retaliation, and hostile work environment arising out of the October 17 suspension.  Pl. Mem. Law Opp. Exh. F.  That complaint was dismissed on May 22, 2013, because the evidence in the record, including a telephonic interview with Plaintiff, "failed to show a nexus between the alleged discriminatory treatment and [Plaintiff's] disability" and failed to show Plaintiff was "subjected to adverse actions or disparate treatment with respect to any of the allegations."  Tracy Decl. Exh. B at 1-2.  The NYSDHR also concluded that Plaintiff's first suspension without pay was not pretext for discrimination because it was substantiated by a Statement of Charges against Plaintiff, citing Plaintiff's problematic office behavior and frequent

tardiness, which Plaintiff had acknowledged during her interview.  Tracy Decl. Exh. B at 2; *see* Pl. Mem. Law Opp. Exh. H (Statement of Charges).

On January 11, 2013, the Equal Employment Opportunity Commission ("EEOC") adopted the findings of the NYSDHR with regards to Plaintiff's ADA claim and issued Plaintiff a Right to Sue letter.  Dkt. 2-1 at 5.  Plaintiff's Right to Sue letter was annexed to the Complaint, but her original EEOC complaint was not.  Because the NYSDHR had not yet issued a decision on Plaintiff's November 29, 2012, grievance, the findings adopted by the EEOC when it issued Plaintiff's Right to Sue letter could only have arisen out of Plaintiff's April 17, 2012, verified complaint.

On January 17, 2013, Plaintiff was "suspended again for a month without pay and escorted out of the building by security."  Dkt. 2 at 8.  The Complaint alleges the suspension was to intimidate and embarrass her.  *Id.*

On March 24, 2013, Hendricks issued Plaintiff a Notice of Informal Conference Charges and Specifications.  Pl. Mem. Law Opp. Exh. H.  That notice cited Plaintiff for, *inter alia*, failing to complete assignments by their deadlines, ¶ 1, and for being late on 20 occasions for a total of 12 hours 40 minutes between September 24, 2012, and March 12, 2013, ¶ 4.[2]

On April 10, 2013, Plaintiff filed this Complaint, claiming discrimination in violation of the ADA, retaliation, and hostile work environment.

---

[2]     To bolster her allegation of discriminatory animus, the Complaint alleges that Hendricks accused Plaintiff of "[bringing] shame to the agency."  Dkt. 2-1 at 2; Pl. Mem. Law Opp. ¶ 14.  Plaintiff submitted the Statement of Charges dated March 23, 2013, as the source of that comment.  Pl. Mem. Law Opp. ¶ 14; Pl. Mem. Law Opp. Exh. H.  After listing the charges against Plaintiff, the Statement of Charges stated that Plaintiff's actions "constituted conduct unbecoming of an employee of the City of New York, tend to bring shame, discredit, and disrespect to the City of New York, and interfere with its orderly operations."  Pl. Mem. Law Exh. H at 3.  Although the Court does not resolve factual issues on a motion to dismiss, the Court may read the comment in the context in which it was made when determining whether the fact supports a plausible claim for relief.  In this context, Hendricks's statement related only to Plaintiff's job performance.

**I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER**

**PLAINTIFF'S STATE LAW CLAIMS**

The NYSHRL and NYCHRL provide two alternative paths for complaints of unlawful discrimination: an administrative action, which is commenced with the NYSDHR or New York City Commission on Human Rights ("NYCCHR"); or a judicial action, which can be commenced in any court of competent jurisdiction. N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502. *See Williams v. City of New York*, 916 F. Supp. 2d 517, 520-21 (S.D.N.Y. 2013). Subject to two exceptions that do not apply here, "the remedies of administrative review through the Human Rights Division or judicial review are *mutually exclusive*." *Williams*, 916 F. Supp. 2d at 521 (quoting *Moodie v. Fed. Reserve Bank of New York*, 58 F.3d 879, 882-83 (2d Cir. 1995)) (emphasis in *Moodie*). The election of remedies bar is jurisdictional; a complaint that has previously been dismissed by the NYSDHR or NYCCHR must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127 (2d Cir. 2002)). "The election of remedies bar also precludes consideration of any claim – whether brought under the NYSHRL or the NYCHRL – arising out of the same incident on which [plaintiff's] [NY]SDHR complaint was based." *Id.* at 188. Accordingly, Plaintiff's claims are barred if they are based on the same "operative events" as her NYSDHR action. *Id.* at 189; *Williams*, 916 F. Supp. 2d at 521.

Plaintiff's claims under the NYSHR and NYCHR are barred. The allegations in the present complaint arise out of the same underlying facts as the two complaints filed with the NYSDHR. Although Plaintiff now asserts in her opposition to Defendants' motion to dismiss that her poor treatment caused her to develop a mental disability, Pl. Mem. Law Opp. ¶ 23, that allegation is not in the Complaint. Even if it were, it arises out of the same operative events as

her NYSDHR complaint.  *See Williams*, 917 F.3d at 522 ("a claimant cannot avoid the jurisdictional bar by merely adding additional elements of damage arising out of the same underlying conduct or by changing his legal theory" (citation omitted)).  Accordingly, her claims under NYSHRL and NYCHRL must be dismissed.

## II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ADA

The Complaint fails to plead sufficient facts to establish a plausible claim that Plaintiff was discriminated against on the basis of a disability or a perceived disability.

A complaint asserting a violation of the ADA must plead sufficient facts to allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an employment action because of [her] disability or perceived disability."  *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005).  Defendants argue that Plaintiff's Complaint fails to plead sufficient facts to satisfy the second element of Plaintiff's *prima facie* case – whether she suffered from or was regarded as suffering from a disability within the meaning of the ADA.

A person has a "disability" that falls within the protections of the ADA if she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment"; or if she is (C) "regarded as having such an impairment."  42 U.S.C. § 12102(1).  Plaintiff's Complaint can be read to state claims of disability discrimination under the first and third definitions but falls short on both.

### A.     ACTUAL DISABILITY

Plaintiff fails to plead sufficient facts to raise a plausible claim that she was disabled within the meaning of the ADA.  "Not every impairment is a 'disability' within the meaning of

the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." *Capobianco*, 422 F.3d at 56. A physical impairment under the ADA is "[a]ny physiological disorder or condition . . . affecting one or more body systems [including digestive]." 29 C.F.R. § 1630.2(h). "'[M]ajor life activities' are 'activities that are of central importance to daily life.'" *Capobianco*, 422 F.3d at 56 (quoting *Toyota Motor Mfg., Ky., Inc.*, 534 U.S. 184, 198 (2002)). The EEOC guidelines include the "operation of a major bodily function" (which includes digestive function) in its list of "major life activities." 29 C.F.R. § 1630.2(i)(1)(ii). An impairment only constitutes a disability under the ADA, however, "if it substantially *limits the ability* of an individual to perform a major life activity as compared to most people in the general population." C.F.R. § 1630.2(j)(1)(ii) (emphasis added).

The Complaint does not contain adequate facts to suggest that Plaintiff is "disabled" within the meaning of the ADA. First, the test results Plaintiff submitted to EEPC were inconclusive; they said only that Plaintiff *could* have TMAU. Even accepting Plaintiff's self-diagnosis as accurate, Plaintiff does not allege that her disorder *limits* her ability to perform a major life activity (her digestive function); she alleges only that her digestive function differs from the "general population" because it causes her to emit a particular odor. Although the digestion of certain foods exacerbates that odor, she does not allege that she is *unable* to digest those foods or that her digestion of those foods is limited. TMAU, therefore, does not limit a major life activity, much less substantially so. Moreover, Plaintiff's own submissions undercut any argument that TMAU "substantially limits" her performance of a "major life activity"; her August 28, 2002, letter to her employer explicitly stated that her disorder was not a physical disability. Dkt. 2-1 at 8.

In her opposition to Defendants' motion to dismiss, Plaintiff claims that her disability was mental, not physical. She states: "Due to my disability, the 'odor', the treatment by co-

workers and management alike.  I became mentally disabled.  Unable to concentrate at work.

The ADA Amendment Act of 2008, says that a disability (in my case mental not physical)

substantially limited a major life activity when active (concentrating, focusing) . . . .  The ADA

prohibits employers from terminating client [with a] mental health condition."  Pl. Mem. Law

Opp. ¶¶ 23-24, 26.  There are no facts in the Complaint or in Plaintiff's opposition papers to

support Plaintiff's claim that her work environment caused her to develop a mental disability,

that she was discriminated against *because of* a mental disability, or that she exhausted her

administrative remedies with the EEOC relative to the mental disability discrimination before

filing her Complaint.  Thus, her claim of discrimination based on a mental disability is

insufficient to withstand a motion to dismiss.

### B.   PERCEIVED DISABILITY

Plaintiff also fails to plead sufficient facts to establish a plausible claim for relief under

the "regarded as" prong of the ADA.  Plaintiff would be afforded the protections of the ADA if

she had alleged that her employer perceived her to be disabled and discriminated against her

based on that erroneous belief.  *Mitchell v. New York City Transit Auth.*, 856 F. Supp. 2d 478,

484 (E.D.N.Y. 2012) (citing *Hilton v. Wright*, 673 F.3d 120, 128-30 (2d Cir. 2012)).  "When a

plaintiff brings a claim on the basis that his employer regarded him as disabled, 'the decisive

issue is the employer's perception of his or her employee's alleged impairment.'"  *Sacks v.

Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014) (quoting *Giordano v. City of New

York*, 274 F.3d 740, 748 (2d Cir. 2001)).  Although the Americans with Disabilities Amendment

Act of 2008 ("ADAAA") loosened the requirements to prove a claim based on a perceived

disability, the Plaintiff must still allege that she "has been subjected to an action prohibited by

the ADA as amended *because of* an actual or perceived impairment that is not both 'transitory

and minor.'"  29 C.F.R. § 1630.2(g)(1)(iii) (emphasis added).

The only facts Plaintiff pleads to suggest that her supervisors at the EEPC perceived her to have an impairment are: (1) her 2002 letter to May, in which she asserted that TMAU was *not* a disability; (2) the TMAU fact sheet attached to her 2002 letter, which stated that physical side effects, other than a foul odor, were rare; (3) Plaintiff's medical test results, which did not diagnose her with TMAU; and (4) anecdotal statements showing Plaintiff's coworkers' thought she smelled bad.[3]

Not every illness, condition or impairment constitutes a disability within the meaning of the ADA. 29 C.F.R. § 1630.2(j)(1)(ii). Any suspicion Plaintiff's employer may have had that she suffered from an actual disability would have been dispelled by Plaintiff's own certification that TMAU was not a physical disability. Furthermore, there is no plausible suggestion that Plaintiff's employer regarded her smell as a *limiting impairment*. Individual bodily functions vary greatly. Some people have less pleasant body odor than others. But common sense precludes viewing such variance as red flags for physical impairment. Absent specific allegations – which are lacking – that Plaintiff's employer or supervisors viewed her body odor as a disability, the Court cannot infer from the Complaint that they so perceived her condition.[4]

### III.   HOSTILE WORK ENVIRONMENT

---

[3] For example, Hendricks "would hold her nose when [Plaintiff] walked into the room" and "make a big sigh . . . as if annoyed by [Plaintiff's] presence;" Hendricks "would move away from [Plaintiff] – changing her seat" and "would immediately take out her scented hand lotion and rub [it] on her hands" when Plaintiff walked in to Hendricks's office, Dkt. 2-1 at 6-7; May would say "is that you" when he passed by Plaintiff's cubicle or when Plaintiff walked in to his office, referring to her smell, Dkt. 2-1 at 7; and other employees gave Plaintiff "nasty looks, cough, or [held] their nose when passing [her] cubicle," made statements that Plaintiff and her area "stank," referred to Plaintiff as "the bathroom situation," and sprayed "Lysol and perfume when [she] left her cubicle to go to the bathroom." Dkt. 2-1 at 6.

[4] The Complaint is also devoid of facts that establish a causal link between Plaintiff's purported impairment and any adverse action in the "terms, conditions, and privileges" of her employment. The first adverse action Plaintiff alleges was a March 2012 poor performance review. There are no facts to tie the poor performance review to any perception that she is disabled. It seems highly implausible that if her supervisors harbored animosity towards Plaintiff based on a perceived disability, they would have waited three years (in Hendricks's case) or ten years (in May's case) to take adverse action against her. That inference is so unlikely that it does not raise Plaintiff's claim above the plausibility threshold.

The Complaint also alleges a hostile work environment based on Plaintiff's disability. The Second Circuit has not determined whether the ADA provides a basis for a hostile work environment claim. *See Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (summary order) (recognizing the Second Circuit has not decided whether the ADA provides a basis for a hostile work environment claim); *Bonura v. Sears Roebuck & Co.*, 62 F. App'x 399, 400 n.3 (2d Cir. 2003), *cert. denied*, 540 U.S. 113 (2004) (summary order) ("The Second Circuit has yet to determine whether the ADA gives rise to a cause of action for hostile work environments, but the circuits that have reached this question have considered it in the affirmative."). District courts in this Circuit have, however, held that such claims may be cognizable. *See, e.g.*, *Boyle v. Lynch*, 10-CV-6520 (MAT), 2014 WL 1056409 (W.D.N.Y. Mar. 18, 2014) (analyzing a hostile work environment claim under the Title VII framework on a motion for summary judgment); *Robinson v. Purcell Constr. Corp.*, 859 F. Supp. 2d 256 (N.D.N.Y. 2012) (same); *Bethea v. Potter*, No. 09-CV-2789 (RWS), 2010 WL 423105 at *13 (S.D.N.Y. Feb. 5, 2010) (same).

Assuming that a claim for hostile work environment is cognizable, Plaintiff fails to plead sufficient facts to withstand a motion to dismiss. If such a claim exists, the same standard required to establish a hostile work environment claim under Title VII would have to be met. *See Farina*, 458 F. App'x at 16-17 (citing the Title VII standard to affirm dismissal of Plaintiff's ADA hostile work environment claim). Under Title VII, harassment is actionable when it creates a work environment that is "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [plaintiff's] employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

As a threshold matter, Plaintiff must show that she is a member of a protected class and that she "was subjected to the hostility because of her membership in [that] protected class."

*Buckley v. New York*, 959 F. Supp. 2d 282, 299 (E.D.N.Y. 2013) (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).

Once that threshold has been met, Plaintiff must plead facts that would tend to show the complained-of conduct: "(1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotations and internal alterations omitted) (citing *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). A plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano*, 294 F.3d at 374 (citation omitted). To survive a motion to dismiss for failure to state a claim, a plaintiff must "plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment were altered for the worse.'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

For the reasons set forth above, Plaintiff failed to meet the threshold of pleading that she was a member of a protected class under the ADA. But even if she had, Plaintiff's hostile work environment claim would still fail. Although the Complaint makes clear that Plaintiff *subjectively* perceived her workplace as hostile or abusive, it does not contain sufficient facts that would lead to the conclusion that a reasonable (objective) employee would view the environment to be hostile or abusive. The Complaint and Plaintiff's submissions, read in their totality, reveal workplace rudeness, which is "not enough to give rise to an actionable hostile work environment claim." *De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 639 (S.D.N.Y. 2011). The Court

is not insensitive to Plaintiff's condition, but "the ADA does not impose a civility code." *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 97 (2d Cir. 2012).

Finally, even if the specific incidents that Plaintiff alleges – receiving poor performance reviews, increased scrutiny of her work, not receiving a timely paycheck on April 13, 2012, being denied leave time, being suspended without pay and escorted from the building by security on October 17, 2012, and on January 17, 2013 – added up to an objectively hostile environment, the Complaint fails to allege facts from which the Court can plausibly draw a causal connection between the incidents and Plaintiff's disability (assuming she has one).

## IV.    RETALIATION

Plaintiff fails to plead sufficient facts to state a plausible claim that the EEPC retaliated against her for engaging in activity protected under the ADA.  The Complaint must plead sufficient facts to support a plausible claim that (1) Plaintiff engaged in protected activity under the ADA; (2) the employer was aware of this activity; (3) an employment action adverse to the plaintiff occurred; and (4) there was a causal connection between the protected activity and the adverse employment action, *i.e.*, that a retaliatory motive played a part in the adverse employment action.  *Kessler v. Westchester Cnty. Dept. of Soc. Svcs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).[5]

---

[5]    It is well-settled that an ADA plaintiff must exhaust administrative remedies before commencing an action in federal court. *See Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001), *cert. denied*, 536 U.S. 922 (2002). This requirement is relaxed under the "reasonably related" doctrine if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (citation omitted).  The individual acts of discrimination that constituted adverse employment actions complained of in the Complaint – poor performance reviews and Plaintiff's suspensions on October 17, 2012, and January 17, 2013 – were not sufficiently related to Plaintiff's April 2012 complaint to fall under the "reasonably related" exception.  Thus, Plaintiff's claims arising out of events that occurred subsequent to Plaintiff's April 2012 complaint are barred because Plaintiff failed to exhaust her administrative remedies.

The chronology of events alleged in the Complaint negate any plausible inference that the EEPC retaliated against Plaintiff for engaging in protected activity.  Plaintiff's April 17, 2012, NYSDHR complaint alleged unlawful retaliation for filing her 2008 complaint and for filing a grievance with her union.  Assuming, *arguendo*, Plaintiff's first unpursued discrimination complaint in 2008 was a "protected activity" within the meaning of the ADA, that complaint was temporally too far removed from the first "act of retaliation" alleged in the Complaint – the performance review Plaintiff received on March 15, 2012 – to create any plausible connection to a retaliatory motive.  *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (there is no "bright line" test for temporal proximity between the exercise of a protected right and an allegedly retaliatory action to give rise to a causal relationship, but courts should exercise their "judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases").  Plaintiff's March 26, 2012, grievance with the Union also post-dated the negative performance evaluation complained of in the April 2012 complaint and was not "protected activity" under the ADA because the grievance was unrelated to discrimination on the basis of Plaintiff's alleged disability.  *See Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15-17 (2d. Cir. 2013) (to establish a *prima facie* claim of retaliation, a plaintiff must show that the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII," even if the "underlying conduct complained of was not in fact unlawful" (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002))).

Plaintiff's second NYSDHR complaint on November 29, 2012, alleged that she was "being harassed and discriminated against for: filing NYSDH[R] complaint in April 2012, genetic disorder (TMAU), disability.  EEPC Ms. Hendricks and Ms. Garcia Quinonez have

scrutinized my work, written me up, suspended me without pay and without cause/charges.

Denied me use of my leave time – told me to use 'Leave without pay' [for the suspension].

Work environment is very hostile/toxic which has affected my health – great deal of additional

stress, anxiety, and depression."  Pl. Mem. Law Opp. Exh. F at 8.  Plaintiff's April 17, 2012,

complaint with the NYSDHR was protected activity because she alleged discrimination based on

her actual or perceived disability; however, Plaintiff did not exhaust her administrative remedies

with the EEOC with respect to a claim of retaliation for filing the April complaint.  The

Complaint alleges only one act of retaliation that allegedly occurred after the November

complaint: Plaintiff's January 17, 2013, suspension without pay.  Although temporally after the

November filing, the Plaintiff fails to allege any facts that would make plausible her assertion

that her second suspension occurred because of the NYSDHR complaint.  And even if she had,

Plaintiff did not exhaust her administrative remedies relative to such a claim.  Accordingly, she

cannot bring suit in federal court for that claim.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is DISMISSED with leave to amend the

Complaint no later than October 31, 2014, if Plaintiff can plead additional facts to show she

exhausted her administrative remedies relative to alleged retaliation actions following her April

2012 NYSDHR complaint.  Otherwise, amendment would be futile.  *See Grullon v. City of New

Haven*, 720 F.3d 133 (2d Cir. 2013).  The Clerk of Court is directed to terminate this case from

the docket, and requested to mail a copy of this Order to the *pro se* Plaintiff.


**SO ORDERED.**

**Date:  September 30, 2014**                                   **VALERIE CAPRONI**
           **New York, NY**                                                 **United States District Judge**

16